**CASE NO. 25-1171**

---

**IN THE**

**UNITED STATES COURT OF APPEALS**

**FOR THE SIXTH CIRCUIT**

---

**DARRYL BROADNAX,**

Plaintiff-Appellant,

v.

**RHOMBUS ENERGY SOLUTIONS, INC.,**

Defendant-Appellee.

---

**ON APPEAL FROM**
The United States District Court
for the Eastern District of Michigan
Case No. 2:23-cv-11343
Hon. F. George Caram Steeh, District Court Judge

---

**REPLY BRIEF OF PLAINTIFF-APPELLANT**

SUBMITTED BY:

Carla D. Aikens, Esq.
Carla D. Aikens, P.L.C.
615 Griswold Street, Suite 709
Detroit, Michigan 48226
carla@aikenslawfirm.com
844.835.2993
*Counsel for Plaintiff-Appellant*

1

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Cline v. Catholic Diocese of Toledo*, 206 F. 3d 651 (6th Cir. 2000)........................3

*Hittle v. City of Stockton,* 604 U. S. ____ (2025) ....................................................10

*McDonald v. Union Camp Corp.,* 898 F. 2d 1155 (6th Cir. 1990) ..........................3

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .....................................2

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1983)...........................................3

*United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983) ..........3

Rhombus urges affirmance on three main grounds: 1) Mr. Broadnax was unqualified, 2) the company's "Incident Chart" proves good-faith discipline, and 3) the hostile-environment and retaliation counts fail as a matter of law. Each position collapses upon straightforward application of Rule 56.

## A. Defendant's "Qualification" Argument Misstates the Law

First, Defendant now apparently concedes that summary judgment was not appropriate if it was based upon this purported resume issue that had never arisen prior to litigation, as it states that the reason Plaintiff could not make out a prima facie case is that he did not meet qualifications Defendant required – five years of management experience and a college degree. (Appellee Brief, Doc. 24 at Page 25).

However, as Plaintiff argued in his brief, qualifications are not part of a prima facie case utilizing the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) test, but are to be considered as part of the pretext analysis. *Cline v. Catholic Diocese of Toledo*, 206 F. 3d 651, 662-64 (6th Cir. 2000); *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714-15 (1983); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1983).

Moreover, whether an individual is qualified is a question of fact. *School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 (1987) (holding that in determining whether an employee is qualified, and there is a bench trial to decide the matter, the district court must make "appropriate findings of fact."). A jury would be asked to decide if Plaintiff were qualified based upon the facts in the case. Further, the inquiry is whether the employee is meeting the employer's legitimate expectations in their performance of the role, not whether they possess "resume" qualifications. *Cline*, 206 F. 3d at 666 (quoting *McDonald v. Union Camp Corp.,* 898 F. 2d 1155, 1160 (6th Cir. 1990). Plaintiff submitted evidence that he was meeting legitimate expectations, as affirmed by him and his colleague, Takelia Stephens, who attested that Defendant hired Plaintiff to just "look the part" in its sale to Borg Warner, because he was Black and it had no Black managers, and that when Plaintiff tried to do his actual job, Defendant did not want him to do that. (ECF No. 23-1, PageID.542-43, Stephens Dec. at ¶¶ 40, 44, 45, 50, 58, 68). Plaintiff stated that the only thing Defendant cared about was not his qualifications prior to being hired but "getting the floor getting the production floor together and getting the rank and file employees in line." (ECF No. 23, Brief, PageID.523). Plaintiff did not even receive the training he thought was necessary to do what Defendant claimed it wanted him to do, (ECF No. 19-5, PageID.317, Broadnax Dep. at 87:10-88:2), which fits with Ms. Stephens' explanation for why it hired Broadnax. Plaintiff did what he was

asked to do by his boss: terminate people. (*Id.* at PageID.312, Broadnax Dep. at 66: - 8:1). Whether a jury believes Plaintiff's or Defendant's evidence as to whether he met Defendant's legitimate expectations is for the jury to decide, not the trial court.

## B. The Record Is Replete With Evidence of Pretext

Pretext analysis does not turn on Defendant's evidence, as Defendant attempts to mislead the Court into believing. This is not a jury trial, which is what Plaintiff demanded when he filed his complaint. Defendant may have submitted evidence, albeit evidence that Plaintiff submits was never presented to him while he worked there, but pretext asks whether Plaintiff can show that the reasons and information Defendant purports it relied upon are true. This evidence is not to be weighed; it is a matter of sufficiency such that a factfinder could find in Plaintiff's favor if his evidence is believed.

Here, Defendant asked, and the trial court did, disregard the testimony of Takelia Stephens as if it is somehow subordinate to that of its witnesses. This disregard of the views of its Black employees is precisely what caused Plaintiff to file this lawsuit. Statements in the declaration of Ms. Stephens are not so easily dismissed as "hearsay." Hearsay is, of course, an out of court *statement* that is coming into evidence for the truth of the matter asserted. Federal Rule of Evidence 401. Not one of the paragraphs in Ms. Stephens' declaration contains any out of

5

court statements coming in for the truth of the matter asserted, nor has Defendant argued the same. She is stating what she observed as an employee while working for Defendant. This included Defendant's differential treatment of employees on the basis of race. Defendant has never made any attempt to rebut anything that she said other than to say that she is "speculating." The failure to deal with any of the many paragraphs of Ms. Stephens' declaration, which is evidence that supports his claims if it is believed by the trier of fact, should have precluded summary judgment in its favor on the matter of proof of pretext.

In addition, there was not just "stray" remark by using the term "colored people" that caused Plaintiff and Ms. Stephens to believe that Defendant discriminated against him on the basis of his race. Stephens stated that Plaintiff was called the n-word by "Ken." (ECF No. 23-1 at ¶48). Further, Plaintiff's claim is not that Pulter referring to Black people as "colored people" is actionable discrimination. The question is whether there is evidence to support that Defendant discriminated against him in terminating him and for raising complaints. First, whether or not Pulter was talking about Plaintiff when he used the extremely offensive term has no place in the analysis. The fact of the matter is that it was said to him, and it contributed to the culture that caused Plaintiff to believe that Defendant's conduct was discriminatory. Even the manner in which Defendant cites with approval its own representatives' attempts to explain away Pulter's use

of that term highlights the gross lack of concern for how offensive referring to any African American person as "colored people" is to its employees. Further, Defendant disregards all of Plaintiff's testimony at his deposition when its counsel asked him about racial issues:

1. When Plaintiff said something about Russ Pulter's mistreatment, others applauded Plaintiff because they believed Pulter to be racist, in general. (ECF No. 19-5, PageID.313, Broadnax Dep. at 72:1-73:21).

2. When asked why Plaintiff believed that he was fired on the basis of race, he said it was because of "[c]omments made by Russ [Pulter], the warehouse manager.· And some comments made by Scott [Stromenger], via Kenneth Blank." (ECF No. 19-5, PageID.310, i*d.* at 57:22-58:3). The comments included a statement by Blank that Stromenger wanted him to terminate the people he wanted Plaintiff to terminate, and that if he could not do that "he's going to label you as one of those black people that just can't do that." (*Id.* at 58:12-13).

3. Plaintiff further testified that Stromenger stated to him directly, when Plaintiff spoke to Pulter about his behavior, not to give problems to his "buddy Russ," and he did not know why "you people act like that." (*Id.* at 58:18-21).

4.  Stromenger further said to Plaintiff that he did not know why "you people act that way. That's why I hired you" to Plaintiff, which he took as a racial remark, referring to being hired to get rid of Black employees. (*Id.* at 59:20-25; 61:5-19).

5.  Plaintiff stated that in addition to the "you people" comment, he believed Stromenger was racist because certain people could say things to Pulter about his behavior and others (such as himself) could not. (*Id.* at 61:5-14).

All of the above evidence in the record, in addition to all of the issues already cited in Plaintiff's opening brief with Defendant's evidence – in particular, that Defendant's termination letter confirms that only one discipline was ever issued to Plaintiff. (ECF No. 20-13 PageID. 493) – should preclude a finding of summary judgment in favor of Defendant. A jury has more than enough evidence to question the true basis for Defendant's termination.

**C. Plaintiff's Hostile Work Environment Claim Must Survive**.

Rhombus claims that the facts needed for the district court to dismiss Plaintiff's hostile work environment claim from him, but the fact remains that Plaintiff never argued any facts on this claim because Rhombus failed to move for the same in its motion. The district court raised and decided the issue without

providing the notice Rule 56(f) requires. *Yashon v. Gregory*, 737 F. 2d 547, 552 (6th Cir. 1984) mandates reversal when a party is denied an opportunity to marshal facts to support a claim.

The record contains evidence that: (a) a coworker calling Mr. Broadnax the n-word, (b) calling Black people "colored people" in a conversation with Plaintiff; (c) telling Plaintiff he was hired to fire Black people, who were referred to as "you people,"; and (c) evidence that HR knew of but failed to correct any of the racially charged conduct. Even Appellee concedes the "colored people" remark occurred but labels them "stray" and not directed at Plaintiff – as if there is any legal basis that summary judgment would be appropriate where one's supervisor used the n-word "in passing" and not directed toward the employee. Even at deposition, Defendant, through its agents, has no concern for the racially hostile work environment it allowed to persist. Severity, frequency, and managerial involvement create a jury question, especially where the conduct emanates from supervisory personnel.

### D. Defendant's Alleged "Intervening" Events Are Themselves Supportive of Plaintiff's Retaliation Claim

Defendant would have the Court believe that a "flurry" of purported negative activity happened within as if this and the keeping of a chart that it never shared with Plaintiff, in and of itself, is not suspicious. First, all of the

"intervening" events purportedly took place in a 7-day span after Plaintiff's second complaint. Defendant did not even document these incidents, as there is only one discipline form for Plaintiff – that came four days after his second complaint and was issued by Stromenger, the same person of whose conduct he complained. (ECF No. 20-12 PageID.490-91). Defendant has no evidence that Exhibit I ever existed prior to litigation and has never even tried to argue that Plaintiff was told about what it on this list.

The undisputed facts in the record are that: 1) Plaintiff's last complaint came on June 9, 2022, and he was admittedly fired within days; and 2) Plaintiff was never written up (not even in secret, in accordance Defendant's Exhibit I), until after his second complaint.

Whether Plaintiff was fired on July 17, or July 22, 2022, thirteen days is still well under the twenty-one days in *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004), found "significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive," such that summary judgment on this claim is not appropriate.

Moreover, Plaintiff presented additional evidence based upon Defendant's actions of only giving him formal discipline after his complaints. HR accepted complaints only from those aligned with management; Ms. Stephens was never

10

interviewed nor questioned, even though she worked with Plaintiff on a daily basis. When biased supervisors feed a decision-maker false information, the employer is liable.

### E. The District Court's Approach Contradicts the Supreme Court Precedent and Recent Guidance Concerning the Use of *McDonnel Douglas* at the Summary Judgment Stage

Defendant failed to address Plaintiff's argument in his opening brief that *McDonnell Douglas* was "not designed with summary judgment in mind" and that Rule 56 must not become a substitute for trial where disputed facts exist. *Hittle v. City of Stockton,* 604 U. S. ____, at slip op. 4 (2025) (Thomas, J., dissenting).

By crediting Rhombus' manufactured chart, disregard of racist comments and conduct, and ignoring undisputed facts that weighed in Plaintiff's favor – particularly with respect to the timing of Plaintiff's termination, the district court improperly granted summary judgment. If summary judgment is affirmed on this set of facts and under the law as it presently stands, it is hard to imagine any case where summary judgment would not be appropriate. An employee's constitutional right to proceed to a jury trial should not be so lightly regarded.

## <u>CONCLUSION</u>

Because genuine disputes of fact exist on every claim, the judgment should be reversed and the case remanded for trial before a jury.

11

Dated: July 9, 2025                    Respectfully Submitted,

                                       /s/ *Carla D. Aikens*
                                       Carla D. Aikens, (P69530)
                                       Carla D. Aikens, P.L.C.
                                       *Attorneys for Plaintiff-Appellant*


## CERTIFICATE OF COMPLIANCE

This brief contains 2,049 words, excluding the parts exempted by Rule 32(f), as counted by Microsoft Word.


## CERTIFICATE OF SERVICE

On July 9, 2025, I filed the foregoing via CM/ECF. The system will serve all counsel of record.

                                       /s/ *Carla D. Aikens*